

1
2
3
4
5
6
7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
8
FRANCISCO SAO,
9                                          CASE NO. C13-5960 RBL-JRC
                    Petitioner,
10                                         REPORT AND RECOMMENDATION
          v.
11                                         NOTED FOR:
    MIKE OBENLAND,                         SEPTEMBER 26, 2014
12
                    Respondent.
13

14       The District Court has referred this petition for a writ of habeas corpus to United States

15 Magistrate Judge J. Richard Creatura. The District Court's authority for the referral is 28 U.S.C.

16 § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.  Petitioner is seeking

17 relief from a state conviction and sentence.  Petitioner filed the petition pursuant to 28 U.S.C. §

18 2254.

19       Petitioner presents the Court with seven grounds for relief in his petition (Dkt. 13).  The

20 Court considered three of the grounds on the merits and finds that petitioner fails to show a

21 violation of clearly established federal law as required by 28 U.S.C. § 2254 (d)(1).  The Court

22 finds petitioner's remaining grounds for relief are procedurally barred because he did not present

23 them at every level of review in state court. The Court recommends that the petition be denied.

24 //

REPORT AND RECOMMENDATION - 1

1    BASIS FOR CUSTODY AND FACTS

2        Petitioner is in custody pursuant to a Pierce County conviction and sentence.  A jury

3    found petitioner guilty of second degree felony murder and tampering with a witness (Dkt. 20,

4    Exhibit 1).  The jury found aggravating factors by special interrogatory and the trial court

5    imposed an exceptional sentence of 600 months (*id.*). The jury also convicted petitioner of felony

6    harassment, but the Washington State Court of Appeals reversed that conviction on collateral

7    review because the evidence was insufficient (Dkt. 20, Exhibit 12).

8        The Washington State Court of Appeals set forth the facts surrounding petitioner's crimes

9    as follows:

10        In July 2007, Francisco Bona Sao lived in an apartment with his girlfriend,
          Kathie Chung. They had two children together, L. and Trumane. At the time, L.
11        was one year old and Trumane was three months old. Before Trumane's birth,
          Sao had a history of domestic violence against Chung and L. Sao and Chung also
12        had a history of methamphetamine use. Chung, born _____, had used "off and
          on" since she was 14 years old. VI Verbatim Report of Proceedings (VRP) at 455.
13        At Chung's invitation, Sao had begun "doing methamphetamine" after Trumane's
          birth. VI VRP at 456–57.

14
15        On July 25, 2007, Sao returned home from work, ate dinner, gave three
          month-old Trumane a bath, and then took Trumane into the bedroom to dress him.
16        Although Sao had previously used methamphetamine [court's footnote. Sao had
          gotten "high the day before" and for a week-long period shortly before that. V
17        VRP at 392.], he did not use it the night of July 25. But Chung believed Sao was
          having hallucinations that night because he appeared "moody, [and] angry," V
18        VRP at 392, and he was "acting weird," looked at her "really weird," and "didn't
          look the same." VI VRP at 464-65. According to Chung, Sao was "coming down
19        off of methamphetamines." V VRP at 392. At some point that evening, Sao and
          Chung had an argument, Sao threatened to "sock [Chung] and kick [her] in [her]
20        face," V VRP at 398, and Sao retreated from the living room back to the bedroom,
          where Trumane was.

21        Sometime after Sao returned to the bedroom, Chung heard two "thumping
          noise[s]." V VRP at 403. She thought Sao was banging on or punching the wall.
22        Later, she went into the bedroom and saw that Trumane "didn't look right," V
          VRP at 406: His stomach was "kind of swollen," V VRP at 408, his "lips were
23        blue," his body felt "cold," and "he was having a hard time breathing." V VRP at
          407-08. Sao initially explained that "[m]aybe the baby swallowed some water"

24

from the bath. V VRP at 408. But later that night he admitted to Chung that he had hit Trumane.

Chung wanted to take Trumane to the hospital, but Sao told her, "[N]o, not yet." V VRP at 409. Three or four more times that night, Chung suggested that they bring Trumane to the hospital, but each time Sao said, "No." V VRP at 421. When eventually Sao performed CPR on the infant, Trumane's breathing improved somewhat, but his condition ultimately worsened. While Chung ran to the car to take Trumane to the hospital, a neighbor intervened and called paramedics. Another neighbor came and gave the infant CPR. Sao fled, saying that there was a warrant out for his arrest. Before leaving, Sao told Chung, "Don't say nothing." V VRP at 420.

Paramedic Travis Smith found that Trumane was not breathing and had no pulse. Smith and other emergency responders began emergency treatment. When he began CPR, Smith discovered that "every rib below [Trumane's] armpit . . . was broken in half," injuries that were inconsistent with mere CPR. IV VRP at 208. Smith also noticed bruising on Trumane's belly around the belly button. Despite the emergency workers' efforts, they were unable to restart Trumane's breathing or to establish a pulse. Paramedics transported Trumane by ambulance to nearby St. Clare Hospital, where he was pronounced dead shortly after.

Pierce County Medical Examiner Dr. Eric Leon Kiesel conducted an autopsy. He confirmed that many of Trumane's ribs were fractured and that CPR had not caused the fractures. Dr. Kiesel also found that Trumane's stomach and liver had been lacerated in several places by "blunt force trauma." VIII VRP at 726. Dr. Kiesel discovered bruises on Trumane's abdomen "consistent with bruises that would be caused by a hand." VIII VRP at 721. These findings led Dr. Kiesel to conclude that "blunt force trauma of the abdomen" had caused Trumane's death. VIII VRP at 741.

After Trumane's death, but before fleeing to California approximately two days later, Sao met with his cousin Pawn Tekkathook. Sao told Tekkathook he was worried that Chung might contact the police and "set[ ] him up" for the murder. V VRP at 346. Sao asked if he could borrow Tekkathook's handgun, RP at 351, "to go pop [Chung] and take his daughter [L]." V VRP at 356. Tekkathook understood the phrase "pop" to mean "kill." V VRP at 356. Sao also said that he "wanted to kill the family," referring to Chung's family. V VRP at 357. Tekkathook refused to lend Sao the handgun. When Sao then offered to buy the gun for $400, Tekkathook again refused.

Police later arrested Sao in Stockton, California. Lakewood Police Detective Brent James Eggleston traveled to California to interview him. Eggleston advised Sao of his Miranda [footnote omitted] rights. Over the course of the interview, Sao eventually admitted that he had (1) spanked Trumane "real, real hard" in the bedroom, VII VRP at 661-62; (2) "punched [Trumane] one time in the stomach . . . not on purpose, it was an accident," VII VRP at 662; (3) looked at Trumane and then "punched him . . . with his right hand . . . [with] full force . . . as hard as he could . . . in the middle of his stomach" as he was yelling at Chung through the bedroom walls,

VII VRP at 664; and (4) hit Trumane "probably three times, full, hard blows . . . as hard as [he could]." VII VRP at 667.

When Eggleston asked Sao if this was the reason that he had refused to take Trumane to the hospital, Sao replied, "[B]ecause I did it, yeah . . . [as well as] because of the warrants that [I] had." VII VRP at 665. When Eggleston asked Sao why he had acted this way, Sao stated, "[I]t was because of the stress from ... [Chung]." VII VRP at 668. During this interview, Sao never claimed that he thought he had been hallucinating or that he thought he was striking the family dog when he struck Trumane. Sao was transferred back to Washington.

While Sao was in the Pierce County Jail, Eggleston learned about numerous recordings of jail phone conversations between Sao and Chung and obtained a warrant for copies of these recordings. In one phone call, Sao and Chung had agreed that "they were caught up with the wrong drug at the wrong time" and that Sao "didn't think that it would take over him, but that day it did take over him, and made him snap." IX VRP at 795. During another conversation, Sao apparently tried to induce Chung to testify falsely or to withhold relevant information from law enforcement agencies.

(Dkt. 20, Exhibit 2 pp. 2-5).  The jury convicted petitioner of second degree felony murder and witness tampering and by special interrogatories found aggravating factors (Dkt. 20, Exhibit 1).  The trial court sentenced petitioner to 600 months incarceration.

<u>PROCEDURAL HISTORY</u>

Petitioner filed a direct appeal raising the following six issues:

1.   Defense counsel was ineffective for failing to propose an instruction holding the State to its burden to disprove diminished capacity beyond a reasonable doubt.

2.   The trial court erred in failing to instruct the jurors regarding the constitutional presumption to be applied in determining whether aggravating circumstances had been proven.

3.   The trial court erred in failing to instruct the jurors that they could not consider facts they relied upon in reaching their verdict on the underlying offense in deciding the existence of aggravating circumstances.

4.   The statutory provisions on the "particularly vulnerability" aggravator is unconstitutionally vague, in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

5.   The exceptional sentence imposed by the trial court was "clearly excessive."

6.      Cumulative instructional error denied Mr. Sao a fair trial on the aggravating circumstances.

(Dkt. 20, Exhibit 4, p. 1).  The Washington State Court of Appeals affirmed both the convictions and

sentence (Dkt. 20, Exhibit 2).  Petitioner filed a petition for discretionary review with the

Washington State Supreme Court raising one issue:

> Under the Sixth and Fourteenth Amendments to the United States Constitution and
> article 1, sections 21 and 22 of the Washington Constitution, the state must prove
> each essential element of the charged crime to a jury beyond a reasonable doubt. The
> corollary to the State's burden is the accused's constitutional right to be presumed
> innocent. Facts which increase the maximum punishment to which an accused person
> is exposed are elements of the aggravated crime. Here, the court bifurcated the
> proceedings and required the jury to determine whether aggravating circumstances
> had been proven in a separate phase from the guilt phase on the underlying offense.
> The court did not instruct the jury on the presumption of innocence as to the
> aggravating circumstances phase, and further informed the jury that its duty to decide
> aggravating circumstances flowed from its having found Mr. Sao guilty. Was the
> failure to properly instruct the jury at the aggravating circumstances phase
> constitutional error? Was the error rendered structural by prejudicial inferences which
> undermined the State's burden of proof?

(Dkt. 20, Exhibit 6, pp. 1-2).  The Washington State Supreme Court denied review without comment

ending petitioner's direct appeal (Dkt. 20, Exhibit 7).

Petitioner filed a personal restraint petition raising the following four grounds for review:

1.      TRIAL COURT FAILED TO NOTIFY THE JURY THAT UNANIMITY
IS NOT REQUIRED IN MAKING A DECISION ON A SPECIAL
VERDICT; MAKING THE EXCEPTIONAL SENTENCE UNDER
AGGRAVATING FACTORS INVALID ON ITS FACE, AND
VIOLATES[sic] THE RIGHT TO A FAIR TRIAL & DUE PROCESS.

2.      FAIL TO REQUEST A LESSER INCLUDED OFFENSE RENDERS
INEFFECTIVE ASSISTANCE.

3.      INSUFFICIENT EVIDENCE ON THE FELONY HARASSMENT.

4.      THE LACK OF HAVING NO SYSTEM OF SENTENCING FOR
PROPORTIONALITY ON AGGRAVATING FACTORS – VIOLATES
DUE PROCESS ON LIBERTY INTEREST; & RECEIVING
ADDITIONAL TIME TO THE STANDARD SENTENCE FOR
CONDUCT NOT PROSCRIBED, VIOLATES THE XIV AMENDMENT
OF DUE PROCESS OF LAW.

(Dkt. 20, Exhibit 9, pp. 4-32).  The Washington State Court of Appeals granted in part petitioner's petition.  The state conceded that the evidence was insufficient to support the felony harassment conviction and the Washington State Court of Appeals granted petitioner relief on that issue (Dkt. 20, Exhibit 12 pp. 1-2).  The Washington State Court of Appeals denied the remainder of the petition (*id.*).  Petitioner sought review in the Washington State Supreme Court raising two issues:

> (1)     THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT IT DID NOT HAVE TO BE UNANIMOUS ON THE SPECIAL VERDICT FORM WHEN ANSWERING "NO," AND FAILED TO INSTRUCT THE JURY TO LEAVE THE FORM BLANK IF THEY DO NOT FIND ANY AGGRAVATING FACTORS.
>
> (2)     IS MANSLAUGHTER A LESSER INCLUDED OFFENSE OF FELONY MURDER?

(Dkt. 20, Exhibit 13, pp. 2-3).  The Washington State Supreme Court Commissioner denied the petition (Dkt. 20, Exhibit 15). Petitioner filed a motion to modify the commissioner's ruling and the Washington State Supreme Court denied the motion (Dkt. 20 Exhibits 16 and 17).

Petitioner filed a second personal restraint petition (Dkt. 20, Exhibit 19).  The Washington State Court of Appeals did not reach the merits of the petition and found the petition time barred (Dkt. 20, Exhibit 20).  Petitioner did not file for discretionary review.

Petitioner filed his federal habeas corpus petition and he raises seven grounds for review:

> 1.     Counsel denied effective assistance of counsel by failing to propose an instruction requiring the State to prove intent and to disprove diminished capacity beyond a reasonable doubt.
>
> 2.     Trial court erred in failing to instruct the jury about the presumption of innocence during the penalty phase of the bifurcated trial.
>
> 3.     Trial court failed to define adequately the term "particularly vulnerable" in the penalty phase instructions.
>
> 4.     600-month exceptional sentence was "clearly excessive."

5.    The special verdict form incorrectly stated the jurors had to be unanimous in either finding Petitioner guilty or innocent.

6.    Counsel defective for failing to request a lesser included offense.

7.    Insufficient evidence to prove felony harassment.

(Dkt. 13, pp. 5-15).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case.  According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law.  Further, there are no factual issues that could not have been previously discovered by due diligence.  Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime.  Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  *Engle v. Isaac*, 456 U.S. 107 (1983).  28 U.S.C. § 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the

1   ground that [petitioner] is in custody in violation of the constitution or law or treaties of the

2   United States."  28 U.S.C. § 2254(a) (1995).  The Supreme Court has stated many times that

3   federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire*, 502

4   U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

5         A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

6   merits in the state courts unless the adjudication either: (1) resulted in a decision that was

7   contrary to, or involved an unreasonable application of, clearly established federal law, as

8   determined by the Supreme Court; or (2) resulted in a decision that was based on an

9   unreasonable determination of the facts in light of the evidence presented to the state courts.  28

10  U.S.C. §2254(d).   Further, a determination of a factual issue by a state court shall be presumed

11  correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

12  convincing evidence.  28 U.S.C. §2254(e)(1).

13                                    DISCUSSION

14        1.      Exhaustion.

15        Respondent concedes that grounds for relief 2, 5, and 6 are properly exhausted.

16  Respondent argues that the other four grounds for relief, 1, 3, 4, and 7 were not properly

17  exhausted and are now procedurally barred (Dkt. 19, pp. 9-15).

18        A state prisoner seeking habeas corpus relief in federal court must exhaust available state

19  relief prior to filing a petition in federal court.  As a threshold issue the court must determine

20  whether or not petitioner has properly presented the federal habeas claims to the state courts.  28

21  U.S.C. § 2254(b)(1) states, in pertinent part:

22        (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
                pursuant to the judgment of a state court shall not be granted unless it appears
23              that:

24

 (A) the applicant has exhausted the remedies available in the courts of the state; or

 (B)(i) there is an absence of available state corrective process; or

 (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

To exhaust state remedies, petitioner's claims must have been fairly presented to the state's highest court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits).

   A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*citing Picard*, 404 U.S. at 275). Petitioner must have exhausted the claim at every level of appeal in the state courts. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275 *and Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must present the claims to the state's highest court, even if such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995). Petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964) (petitioner failed to exhaust the claim that the state trial court improperly admitted evidence because petitioner never presented such a claim to the state court). Specifically, petitioner must apprise the state court that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad

1    constitutional principles such as due process, equal protection, or a fair trial are not enough.

2    *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir.

3    1999), *cert. denied*, 528 U.S. 1087 (2000) (petitioner's statement that the state court's cumulative

4    errors denied him a fair trial was insufficient to specifically articulate a violation of a federal

5    constitutional guarantee); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).  Petitioner must

6    include reference to a specific federal constitutional guarantee, as well as a statement of the facts

7    that entitle petitioner to relief.  *Gray v. Netherland*, 518 U.S. at 162-163.

8            Here, the only issues that petitioner presented to the state's highest court involve his

9    exceptional sentence and the argument that manslaughter is a lesser included offense to second

10   degree felony murder (Dkt. 20 Exhibit 6, pp. 1-2 and Exhibit 13, pp. 2-3). Grounds for relief 1, 4,

11   and 7 were never presented to the State's highest court.  Further, petitioner has already received

12   relief on his felony harassment conviction and there is no reason to include it in this petition.

13           Ground for relief number 3 requires closer consideration.  Petitioner asks the Court to

14   consider whether or not failure to instruct the jury on the term "particularly vulnerable" was a

15   constitutional error (Dkt. 13, p. 8).  In his direct appeal, petitioner asked the Washington State

16   Supreme Court to consider whether or not the jury was properly instructed in the penalty phase,

17   but his argument is that the trial court did not instruct the jury on the presumption of innocence

18   in the penalty phase (Dkt. 20, Exhibit 6, pp. 1-2).  This is not the same issue. Petitioner must

19   present the claims to the state's highest court based upon the same federal legal theory and

20   factual basis as the claims are subsequently asserted in the habeas petition.  *Hudson v. Rushen*,

21   686 F.2d 826, 830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333

22   F.2d 173, 176 (9th Cir. 1964).  Thus, ground for relief 3 is also unexhausted.  The Court finds

23   that grounds for relief 1, 3, 4, and 7 were not properly exhausted.

24

2.       Procedural default.

Petitioner cannot now return to state court to exhaust his claims as any further collateral challenge will be time barred and second or successive.  *See* RCW 10.73.090; *See also* RCW 10.73.140.   The state court specifically found petitioner's second personal restraint petition was time barred (Dkt. 20, Exhibit 20).  Thus, petitioner procedurally defaulted on grounds for relief 1, 3, 4, and 7.

A state petitioner seeking federal habeas review of his or her conviction or sentence on a procedurally defaulted constitutional claim must establish either: (1) cause for the default and actual prejudice resulting from the alleged constitutional error; or (2) that a fundamental miscarriage of justice will result if the claim is not reviewed.  If petitioner claims that there has been a fundamental miscarriage of justice, then petitioner must prove his or her "actual innocence."

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A.  Cause and Prejudice.

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Examples which may satisfy "cause" include

1   "interference by officials" that makes compliance with state procedural rules impracticable, "a

2   showing that the factual or legal basis for a claim was not reasonably available to counsel", or

3   "ineffective assistance of counsel." *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at 488).

4       Petitioner cannot show prejudice in this case.  Petitioner filed a direct appeal and a

5   personal restraint petition but he did not include his grounds for relief at every level.  Having

6   determined that petitioner cannot show cause, the Court does not consider if petitioner can show

7   prejudice.

8       B.  Actual Innocence.

9       If a petitioner fails to comply with procedural requirements in seeking federal habeas

10  review, ordinarily a court would dismiss the claim as procedurally defaulted.  *See House v. Bell*,

11  547 U.S. 518, 536 (2006).  However, a petitioner who would be otherwise procedurally barred

12  from bringing a federal habeas claim may be able to obtain habeas review if petitioner can come

13  forward with sufficient proof of actual innocence to bring him or her "within 'the narrow class of

14  cases...implicating a fundamental miscarriage of justice.'"  *Schlup v. Delo*, 513 U.S. 298, 314-15

15  (1995) (*quoting McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

16      Petitioner can show "actual innocence" if the "evidence of innocence [is] so strong that a

17  court cannot have confidence in the outcome of the trial." *See Schlup*, 513 U.S. at 316. "The

18  meaning of actual innocence . . .  does not merely require a showing that a reasonable doubt

19  exists in the light of the new evidence, but rather that no reasonable juror would have found the

20  defendant guilty." *Schlup*, 513 U.S. 298, 329 (1995).  "It must be presumed that a reasonable

21  juror would consider fairly all of the evidence presented. It must also be presumed that such a

22  juror would conscientiously obey the instructions of the trial court requiring proof beyond a

23  reasonable doubt."  *Id*. This standard "does not require absolute certainty about petitioner's guilt

24

1    or innocence", but it permits review only in the "extraordinary case."  *House*, 547 U.S. at 538

2    (*citing Schlup*, 513 U.S. at 327).

3    Petitioner cannot meet that heavy burden.  Petitioner admits that he struck the victim, a

4    three month old child in the stomach.  The autopsy found that blunt force trauma caused the

5    victim's death (Dkt. 20, Exhibit 2 pp. 2-5).  Actual innocence is not an issue in this action.

6    Therefore, the Court concludes that grounds for relief 1, 3, 4 and 7 are procedurally defaulted.

7    The Court recommends theses four grounds for relief be dismissed as procedurally barred

8    without consideration on the merits.

9    3.    The merits.

10   A.  Presumption of innocence at the penalty phase.

11   Petitioner argues that the trial court failed to instruct the jury on the presumption of

12   innocence during the penalty phase of the trial (Dkt. 13, p. 7).  The Washington State Court of

13   Appeals addressed this issue on direct appeal and stated:

14          Sao next argues that the trial court erred in failing to instruct the jury about
        the presumption of innocence a second time,[FN6], during the penalty phase of

15      the bifurcated trial.  Sao not only failed to object to the trial court's giving this
        instruction solely during the guilt phase of the trial, but he also affirmatively

16      represented that the instructions the trial court proposed to give for the
        aggravating circumstances phase accurately reflected the law.[FN7]. Therefore,

17      he has failed to preserve the issue for appeal.  *See* RAP 2.5(a).

18          [FN6]. During the initial guilt phase of the trial, the trial court instructed
        the jury:

19              A defendant is presumed innocent.  This presumption continues
              throughout the entire trial unless during your deliberations you find

20              it has been overcome by the evidence beyond a reasonable doubt.
        Verbatim Record of Proceedings (VRP) (July 23, 2008) at 10; CP at 31.

21

22          [FN7].  When asked whether he had any objections to the instructions the
        trial court intended to use, defense counsel remarked, "Your Honor, I

23      believe that they accurately reflect the applicable WPICs. 11 VRP at 1040,
        referencing the *Washington Pattern Jury Instructions- Criminal* (WPIC).

24      The trial court then noted, "Then, [defense counsel] does not appear to

have any concerns with these instructions." 11 VRP at 1040. Again, Sao voiced no objections.

Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." *State v. Munguia*, 107 Wn. App. At 340 (*citing State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). Here, Sao contends that the trial court's failure to instruct the jury a second time about his presumption of innocence during the aggravating circumstance portion of the bifurcated trial, sua sponte, denied him due process under the Fourteen Amendment of Washington's Constitution. This argument fails.

The law in Washington is well settled that "[t]he presumption of innocence does not apply to the penalty phase in special sentencing proceedings." *State v. Benn*, 120 Wn.2d 631, 668, 845 P.2d 289 (1993), *cert. denied*, 510 U.S. 944, 114 S. Ct. 382, 126 L. Ed. 2d 331 (1993). *See also State v. Finch*, 137 Wn.2d 792, 865, 975 P.2d 967 (1999), *cert. denied*, 528 U.S. 922, 120 S. Ct. 285, 145 L. Ed. 2d 239 (1999). Because failure to instruct the jury about the presumption of innocence during the penalty phase was not error, Sao has demonstrated neither a constitutional nor manifest error warranting our review.

(Dkt. 20, Exhibit 2, pp 9-10).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. §2254(d). In the context of a defendant being shackled during the penalty phase of a capital case the Supreme Court stated "the defendant's conviction means that the presumption of innocence no longer applies." *Deck v. Missouri*, 544 U.S. 622, 632, 125 S. Ct 1207, 2014, 161 L.Ed.2d 953 (2005). Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. . Accordingly, the Court recommends denial of this ground for relief.

B. Unanimity in the special verdict form.

1    Petitioner raised this ground for relief in his collateral challenge to the conviction.

2   Petitioner argued that the jury had to be instructed that it did not have to be unanimous to reject a

3   special verdict (Dkt. 20, Exhibit 9, p. 4).  The Washington State Court of Appeals stated:

4          Sao has failed to show constitutional error or actual prejudice with regard to his
           contention that the trial court erred by failing to instruct the jury that it did not
5          have to be unanimous to answer "no" on a special verdict form.  In support of his
           contention, Sao cites to our Supreme Court's decision in *State v. Bashaw*, 169
6          Wn.2d 133 (2010), *overruled by State v. Nunez*, 174 Wn.2d 707 (2012).  In
           *Nunez*, our Supreme Court overruled the portion of *Bashaw* that previously held a
7          trial court errs by instructing a jury that it must be unanimous to reject an
           aggravating factor increasing the defendant's sentence.  174 Wn.2d at 715.
8          Because *Bashaw* is no longer controlling authority and because the special verdict
           instruction here is proper under *Nunez*, Sao has failed to demonstrate
9          constitutional error or actual prejudice with regard to his special verdict jury
           instruction.

10   (Dkt. 20, Exhibit 12, p. 2).

11
            The Washington State Supreme Court Commissioner also addressed this issue and held:
12

13         In his petition Mr. Sao challenged the superior court's instruction to the jury on
           the aggravating factor special verdicts, arguing that it improperly required the jury
14         to be unanimous in reaching negative answers to the special inquiries, contrary to
           the court's decision in *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010).
15         The Court of Appeals properly rejected this argument in light of this court's
           decision overruling *Bashaw* on this point in *State v. Guzman Nuñez*, 174 Wn.2d
16         707, 719, 285 P.3d 21 (2012).  But Sao now argues that the instruction was
           erroneous because it did not tell the jury to leave the special verdict form blank if
17         they could not unanimously agree on answers to the special inquiries.  He relies
           for this argument mainly on *State v. Brett,* 126 Wn.2d 136, 892 P.2d 29 (1995),
18         where this court approved an instruction on aggravating circumstances in a
           murder prosecution which told the jury that if it could not reach a unanimous
19         decision on any aggravating factor it was to leave the verdict form blank for that
           factor. *Id.* at 173.

20             But Mr. Sao cites no authority suggesting that the absence of this language
           deprived him of due process, as he claims.  This court noted in *Guzman Nuñez*
21         that such language "is a more accurate statement of the State's burden and better
           serves the purposes of jury unanimity," and thus the court "endorse[d] the *Brett*
22         instruction *going forward*."  *Guzman Nuñez*, 174 Wn.2d at 719 (emphasis added).
           But the court did not hold that the absence of that language requires reversal, and
23         indeed it upheld the sentence enhancements in that case despite the superior
           court's failure to explain to the jurors what to do with the forms it they could not

24

1    reach unanimous agreement.  Mr. Sao's argument on this point is therefore
2    meritless.

(Dkt. 20 Exhibit 15, pp. 1-2).

3

4    Respondent argues that the holdings of the state courts do not violate clearly established

5    law.  Respondent states:

6            Claim 5 similarly fails because the Supreme Court has not clearly
         established as a constitutional rule that jurors provide a unanimous verdict.
7        "[T]here is no general requirement that the jury reach agreement on the
         preliminary factual issues which underlie the verdict." *Schad v. Arizona*, 501 U.S.
8        624, 632 (1991); *see also Richardson v. United States*, 526 U.S. 813, 817 (1999).
         As the Fifth Circuit recognized, "the Supreme Court has not held that the
9        Constitution imposes a jury unanimity requirement." *Hoover v. Johnson*, 193 F.3d
         366, 369 (5th Cir. 1999). The Washington Court of Appeals and the Washington
10       Supreme Court reasonably rejected Sao's claim, determining the absence of the
         proposed unanimity instruction did not violate a constitutional right. Exhibit 12, at
11       2; Exhibit 15, at 1-2. Sao is not entitled to relief because the state court
         adjudication was not contrary to or an unreasonable application of clearly
12       established federal law.

13   (Dkt. 19, p. 20).  Review of the cases cited by the state court and respondent convinces the Court

14   that the holdings of the state court do not violate clearly established federal law.  There is not a

15   presumption of innocence in the penalty phase of a case because the jury has already found

16   defendant guilty.  A habeas corpus petition shall not be granted with respect to any claim

17   adjudicated on the merits in the state courts unless the adjudication resulted in a decision that

18   was contrary to, or involved an unreasonable application of, clearly established federal law, as

19   determined by the Supreme Court.  28 U.S.C. §2254(d).  Petitioner fails to show any violation of

20   clearly established federal law or a requirement of unanimity instruction regarding the special

21   verdict.  The Court recommends denial of this ground for relief.

22       C.       Ineffective assistance of counsel by failing to request a lesser included offense
23   instruction.

24

REPORT AND RECOMMENDATION - 16

1       In order to establish that petitioner was ineffectively assisted by counsel, petitioner must

2 show that counsel's representation fell below an objective standard of reasonableness and that

3 the deficient performance affected the result of the proceeding.  *Strickland v. Washington*, 466

4 U.S. 668, 686 (1984).  There is a strong presumption that counsel's conduct falls within the wide

5 range of reasonable professional assistance.  *Id.* at 689.  In order to demonstrate prejudice,

6 petitioner must show there is a reasonable probability that but for counsel's unprofessional

7 errors, the result would have been different.  *Strickland*, 466 U.S. at 694.

8       Our "[r]eview of counsel's performance is highly deferential and there is a strong

9 presumption that counsel's conduct fell within the wide range of reasonable representation."

10 *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (*citing Hensley v. Crist*, 67 F.3d 181, 184

11 (9th Cir. 1995)).

12       Petitioner must show that the attorney's conduct reflects a failure to exercise the skill,

13 judgment, or diligence of a reasonably competent attorney.  *United States v. Vincent*, 758 F.2d

14 379, 381 (9th Cir.), *cert. denied*, 474 U.S. 838 (1985).  Petitioner must rebut "a strong

15 presumption that counsel's conduct falls within the wide range of reasonable professional

16 assistance," and that counsel's performance was "sound trial strategy."  *Id.* at 689.  This court

17 must attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of

18 counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

19 time."  *Id.*

20       Next, petitioner must demonstrate prejudice -- that but for counsel's unprofessional

21 errors, the result would have been different.  *Strickland*, 566 U.S. at 694.  This Court must

22 determine whether or not counsel's errors or omissions rendered the proceeding fundamentally

23 unfair or the result, unreliable.  *Lockhart v. Fretwell*, 506 U.S. 368-72 (1993).   To meet the

24

REPORT AND RECOMMENDATION - 17

1    second *Strickland* requirement of prejudice, "defendant must show that there is a reasonable

2    probability that, but for counsel's unprofessional errors, the result of the proceeding would have

3    been different.  A reasonable probability is a probability sufficient to undermine confidence in

4    the outcome." *Id*. at 694.

5          Under the Antiterrorism and Effective Death Penalty Act (AEDPA), it is not enough for a

6    petitioner to convince this court that the state court applied *Strickland* incorrectly; rather,

7    petitioner must show that the state court applied *Strickland* in an objectively unreasonable

8    manner. 28 U.S.C.A. § 2254 (d) (1); *see Harrington v. Ritcher*, No. 09-587 2011 WL 148587

9    (U.S. January 19, 2011); *Bell v. Cone*, 535 U.S. 685 (2002).

10         The Washington State Court of Appeals found that counsel was not deficient in failing to

11   request the manslaughter instruction because manslaughter is not a lesser included offense to

12   second degree felony murder predicated on first or second degree assault of a child (Dkt. 12,

13   Exhibit 12, pp. 3-4). To convict the jury needed to find that petitioner intentionally assaulted the

14   victim resulting in the victim's death (*id*.).

15         The Washington State Supreme Court Commissioner agreed and stated:

16           Moreover, Mr. Sao overlooks the fact that he raised this issue in the
       context of a claim of ineffective assistance of counsel. It is well-established when

17        Mr. Sao was tried that manslaughter is not a lesser included offense of second
       degree felony murder predicated on assault. Defense counsel cannot be deemed

18        professionally deficient for failing to make a meritless argument. *State v.*
       *Williams*, 152 Wn. App. 937, 944-45, 219 P.3d 978 (2009).

19

20   (Dkt. 20, Exhibit 15, p. 3).  Petitioner not only fails to show that counsel's performance was

     deficient, he fails to show that the state court's adjudication on this issue is objectively

21

     unreasonable.  *Harrington v. Ritcher*, No. 09-587 2011 WL 148587 (U.S. January 19, 2011);

22

     *Bell v. Cone*, 535 U.S. 685 (2002).  Habeas corpus relief is not available on this ground for relief.

23

24

REPORT AND RECOMMENDATION - 18

1    Accordingly, the Court has found that each of petitioner's grounds for relief fails.  The Court

2    recommends denial of this petition and denial of a certificate of appealability.

3                                    CERTIFICATE OF APPEALABILITY

4            A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

5    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

6    (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

7    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

8    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

9    disagree with the district court's resolution of his constitutional claims or that jurists could

10   conclude the issues presented are adequate to deserve encouragement to proceed further."

11   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

12   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

13   certificate of appealability with respect to this petition.

14           Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

15   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

16   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

17   review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

18   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

19   September 26, 2014, as noted in the caption.

20           Dated this 3rd day of September, 2014.

21

22
                                                        J. Richard Creatura
23                                                      United States Magistrate Judge

24